UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GUY JOHNSON | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | 3:09-CV-1190 (CFD) |
| | : | |
| JOHN E. POTTER, POSTMASTER | : | |
| GENERAL & THE UNITED STATES OF | : | |
| AMERICA | : | |
|     Defendants. | : | |

**RULING ON MOTION TO DISMISS**

On July 17, 2009, the plaintiff, Postal Worker Guy Johnson ("Johnson"), filed a complaint against his supervisor, William Boordsen ("Boordsen"), in the Superior Court for the Judicial District of New London, alleging violations of Title VII, the Connecticut Fair Employment Practices Act ("CFEPA"), tortious interference with contract, negligent and intentional infliction of emotional distress, and failure to supervise. Boordsen removed the action to this Court on July 27, 2009. Boordsen was then replaced as the defendant by John E. Potter, the Postmaster General, and the United States of America ("Defendants"). Defendants now move to dismiss the case under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons that follow, the motion to dismiss is granted.

**I.    Background[1]**

Johnson is employed as a postal clerk at the United States Post Office in North Stonington, Connecticut. Johnson's claims stem from a number of allegedly harassing incidents

---

[1] These facts are taken from Johnson's complaint and opposition to the motion to dismiss. The allegations must be assumed true for the purpose of resolving the motion to dismiss.

at work beginning in March 2007.[2]

In March and June of 2007, a supervisor, Kay Lautenheiser ("Lautenheiser"), sexually harassed Johnson on the basis of his sexual orientation and gender. Johnson sought assistance from Boordsen, but Boordsen refused. In his complaint Johnson claims that in or about August 2007, Boordsen reprimanded Johnson when he discovered that Johnson had sought help through the Equal Employment Office ("EEO"). Around that same time Boordsen changed Johnson's starting time for work and removed Johnson's fan, even though he allegedly knew Johnson had high blood pressure and required a cool environment. Johnson then filed a complaint with the Connecticut Commission on Human Rights and Opportunities; however, the Commission refused to review the matter, asserting that it did not have jurisdiction.

In 2008, Boordsen and Lautenheiser allegedly continued their harassing behavior by removing items Johnson needed for work, breaking his glasses, hiding his mail, making comments about his sexuality, calling him "queer" and utilizing other offensive language, and spreading false rumors about his sexuality—including that his lover was an incarcerated gay pedophile. These actions resulted in Johnson's suspension from work as well as loss of leave and sick time because he was unable to work.[3]

Also in 2008, Boordsen issued an order that required Johnson to seek medical assistance because of a "perceived suicidal and dangerous disposition." Johnson did seek such assistance, and the psychiatrist apparently disagreed with the order and informed Boordsen. Boordsen then

---

[2]In his opposition to the motion to dismiss, Johnson alleges that the harassing behavior had started in 1996 and resulted in a past internal complaint to the Equal Employment Office. However, Johnson does not allege claims based on any actions prior to 2007.

[3] The language in the complaint is unclear as to whether Johnson is referring to employer imposed suspension here.

changed the order and required Johnson to either seek help for a perceived physical condition or face expulsion.  Again, Johnson's physicians disagreed with the order and expressed concerns that Boordsen was manufacturing bases to terminate Johnson.  Johnson was suspended from work each time Boordsen ordered this assistance.  In 2009, Boordsen and Lautenheiser made numerous statements to Johnson and others that they were going to "get rid" of Johnson or get him fired.   Johnson claims that as a result of this pattern of alleged harassment and intimidation he has suffered anxiety, depression, angina, and other medical issues.

**II.**     **Discussion**

A.     Title VII

The defendants declare that Johnson's Title VII claim for employment discrimination should be dismissed because he has failed to allege that he exhausted his administrative remedies.  Before bringing a Title VII suit, a federal employee must timely exhaust his administrative remedies.  Mathirampuzha v. Potter, 548 F.3d 70, 74 (2d Cir. 2008).  Under the EEOC regulations, an aggrieved federal employee must consult an EEO Counselor within 45 days of the discriminatory action.  29 C.F.R. § 1614.105(a)(1) (2009).  If after the completion of counseling period the matter is not resolved, the employee may then file a formal complaint within 15 days of the EEO counselor's notice of final interview.  Id. § 1614.105(d).  After either 90 days of notice of a final agency decision on his EEO complaint, or 180 days from the filing of the complaint if the agency has not yet rendered a decision, the employee may file a civil action against the head of the department.  42 U.S.C. § 2000e-16(c).  Exhaustion of administrative remedies is a prerequisite to bringing a Title VII claim in federal court, rather than a jurisdictional requirement.  Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000).

Therefore, the Court treats a motion to dismiss for failure to exhaust as a Fed. R. Civ. P. 12(b)(6) motion. See Gibson v. State of Conn., Judicial Dep't, Court Support Servs. Div., No. 3:05-CV-1396 (JCH), 2006 WL 1438486, at *3 (D.Conn. May 23, 2006).

Although Johnson's complaint alleges that in August 2007 Boordsen reprimanded Johnson for seeking assistance through the EEO process, Johnson does not provide any evidence that he sought such assistance or when he sought such assistance. More importantly, the complaint does not allege exhaustion of his EEO remedies.[4] Additionally, in Johnson's prior action against the Post Office concerning discrimination by Boordsen and Lautenheiser, District Judge Squatrito found that Johnson had failed to exhaust his administrative remedies and dismissed Johnson's Title VII claim against the Postal Service with prejudice. See Johnson v. U.S. Postal Serv., No. 3:09CV00425(DJS), 2009 WL 1581102, at *3 (D.Conn. June 5, 2009).

In a July 2007 letter to his attorney, Johnson refers to a written sexual harassment complaint against Lautenheiser on March 5, 2007. See Pl. Ex. 2. Johnson characterizes this complaint as another "administrative action;" however, the "Declaration of Guy Johnson" included with Exhibit 2 clearly states that the investigation was an internal management investigation completely separate from the EEO process. The Declaration goes on to note that if Johnson wished to pursue the matter in the EEO forum he would need to contact the District EEO office. All other actions taken by Johnson appear to only be complaints to the Northeast Area Vice President and Boordsen, and requests for these individuals to investigate the harassing

---

[4]The evidence and argument presented by Johnson show that he filed an internal EEO complaint against Lautenheiser in 1996, and an Information for Precomplaint Counseling in June 1998. These complaints, however, are outside of the time period of any harassment alleged in this complaint.

conduct.  Johnson does provide evidence that he attempted to file a complaint with the Commission on Human Rights and Opportunities, but this complaint was dismissed for lack of jurisdiction and is inapplicable to the EEOC exhaustion guidelines.  Therefore, Johnson has presented no evidence that he has exhausted any of his administrative remedies, and his Title VII claim must be dismissed.

B.   CFEPA

Johnson concedes that the CFEPA claim will be dismissed by this Court.  See Pl.'s Opp. Memo. at 4 ("[T]hese personal acts violated CEPFA [sic] and quite naturally will be dismissed by this court.").  Additionally, it is clear that Title VII preempts CFEPA in the context of federal employment.  See Johnson, 2009 WL 1581102, at *3; Mathirampuzha v. Potter, 371 F.Supp. 2d 159, 162 (D.Conn. 2005) (holding that Title VII preempts CFEPA actions against the USPS and dismissing plaintiff's CFEPA claim); see also Brown v. Gen. Servs. Admin., 425 U.S. 820, 835 (1976) (holding that Title VII offers the exclusive remedy for claims of discrimination in federal employment); Colon v. U.S. Postal Serv., 95 F.Supp. 2d 85, 88 (D.Conn. 1999).  Moreover, as Judge Squatrito noted in footnote 4 of his opinion, the federal government has not waived sovereign immunity with regard to CFEPA, nor is it clear how CFEPA, a state statute, could waive the immunity of the federal government.  See Johnson, 2009 WL 1581102, at *3 n.4. Therefore, Johnson's CFEPA claim is also dismissed.

C.   Tort Claims

The defendants claim that Johnson's tort claims (Counts Three through Six) should be dismissed because Johnson has not alleged that he presented those claims to the Postal Service prior to filing suit.  The Federal Tort Claims Act ("FTCA") is applicable to the Postal Service.

See 39 C.F.R. § 912.5. Under the FTCA, the United States waives its sovereign immunity with respect to tort claims. 28 U.S.C. § 2674. The FTCA permits suits only on claims that the federal employee has first presented to the relevant agency and that have been denied in writing or that have not received a final determination after six months. Id. § 2675. A federal employee cannot bring suit in federal court until he has exhausted his administrative remedies as required under the FTCA. Russo v. Glasser, 279 F.Supp. 2d 136, 146 (D.Conn. 2003). "This requirement is jurisdictional and cannot be waived." Burritt v. Potter, No. 3:06CV01754(AWT), 2007 WL 1394136, at *5 (D.Conn. May 10, 2007); see Wyler v. United States, 725 F.2d 156, 159 (2d Cir. 1983) (noting that the failure to satisfy requirement timely filing an administrative claim with the appropriate government agency deprives the court of subject matter jurisdiction); see also Keene Corp. v. United States, 700 F.2d 836, 841 (2d Cir. 1983) (noting that "because the FTCA constitutes a waiver of sovereign immunity, the procedures set forth in Section 2675 must be adhered to strictly"). According to Postal Service Regulations, any claims should be filed with the Tort Claims Coordinator for the Postal Service District Office in St. Louis, Missouri. See 39 C.F.R. § 912.4. A claim shall be deemed presented when the Postal Service receives an "executed Standard Form 95, Claim for Damage or Injury" or another written notification of an incident, accompanied by a claim for money damages. Id. §912.5(a).

Here, there is no evidence or allegations that Johnson complied with this process. All of his requests were to either the supervisor in charge of the North Stonington Post Office or to the Northeast Area Vice President. None of these requests were accompanied by a claim for money damages. Finally, none of the complaints were directed toward the Tort Claims Coordinator in St. Louis, as required under the regulations. Therefore, because Johnson did not present his

claims to the Post Office as required by the FTCA, Johnson's tort claims (Counts Three through Six) are dismissed for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1).

### III.   Conclusion

Accordingly, the defendants motion to dismiss [Dkt # 15] is GRANTED.

SO ORDERED this   17th   day of December 2009, at Hartford, Connecticut.

 /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**